AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

United States of America
v.

RAVEN BEAN
*Defendant(s)*

Case No. 3:19 mj 125

MICHAEL J. NEWMAN

FILED
RICHARD W. NAGEL
CLERK OF COURT
2019 FEB 28  PM 2: 20
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. @ DAYTON

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   December 18, 2018   in the county of   Montgomery   in the
  Southern   District of   Ohio  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(B)(vi) | knowingly or intentionally possessed with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of valeryl fentanyl, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

TFO FREDERICK D. ZOLLERS, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/28/19

City and state:    DAYTON, OHIO

*Judge's signature*

MICHAEL J. NEWMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, Frederick D. Zollers, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio and have been for over twelve (12) years. I am presently a sworn member of the Montgomery County Sheriff's Office ("MCSO"). I am currently assigned to the Federal Bureau of Investigation's ("FBI") Southern Ohio Safe Streets Task Force ("SOSSTF" or "Task Force") as a Task Force Officer. I have received training in drug trafficking investigations and have conducted and participated in numerous such investigations (ultimately leading to successful prosecution) involving surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance that resulted in the seizure of narcotics, firearms, and United States currency. Based on my training and experience, I am familiar with federal drug laws, and I am aware that it is a violation of Title 21, United States Code, Section 841(a)(1) to knowingly and intentionally distribute and possess with intent to distribute controlled substances (including heroin, fentanyl, cocaine, and methamphetamine).

2. This Affidavit is submitted in support of a criminal complaint, and seeks the issuance of an arrest warrant against **RAVEN BEAN** (hereinafter "**BEAN**") for possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of a fentanyl analogue in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

3. Along with other law enforcement agents, I have participated in the investigation of **BEAN** in connection with the conduct detailed in this Affidavit. As part of the investigation, I have, among other things, discussed information with, and reviewed documentation and reports provided by, other law enforcement officers. My knowledge of the facts and circumstances set forth in this Affidavit is thus based upon my own personal observations, as well as information I have received from other law enforcement officers involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have indirect knowledge.

4. I have elected not to include in this Affidavit all the factual details gathered to date during the investigation, but rather I have included only certain information sufficient to establish probable cause to believe that **BEAN** has committed a violation of 21 U.S.C. § 841(a)(1).

## SUMMARY OF PROBABLE CAUSE

5. On December 18, 2018, I, along with members of the SOSSTF, MCSO, and Dayton Police Department ("DPD") conducted surveillance in the City of Dayton and surrounding areas in known high-crime areas in an effort to combat narcotics- and weapons-related offenses.

6. Task Force members and other law enforcement began surveilling the driver of a silver 2009 Chevrolet Malibu observed in suspected car-to-car drug transactions. The Chevrolet Malibu bore Ohio registration HHW6878. While surveilling the Chevrolet Malibu, I directed MCSO Deputy Herbert Thornton to conduct a traffic stop on the Chevrolet Malibu for a window tint violation. Deputy Thornton activated his cruiser's overhead lights and

1

       initiated an attempted traffic stop on the Chevrolet Malibu on Gettysburg Avenue south of Hillcrest Avenue in the City of Dayton. The driver of the Chevrolet Malibu, later identified as **BEAN**, failed to stop and fled from Deputy Thornton.

7. Law enforcement maintained surveillance as **BEAN** fled in the Chevrolet Malibu. As he fled, **BEAN** drove recklessly and committed numerous traffic violations, including passing vehicles by using the oncoming lane and failing to stop at several stop signs. **BEAN** drove to and parked behind an apartment building located at 3128 West Riverview Avenue.

8. As FBI Special Agents ("SA") Robert Buzzard and Nick Graziosi arrived in the area where **BEAN** parked, **BEAN** began to exit the driver's seat of the Chevrolet Malibu. SA Buzzard and SA Graziosi observed **BEAN** standing at the Chevrolet Malibu with the driver's door open. SA Buzzard exited his vehicle and ordered **BEAN** to lay on the ground. **BEAN** immediately began running, and SA Buzzard and SA Graziosi pursued him on foot. **BEAN** fell and SA Graziosi was able to take **BEAN** into custody without further incident.

9. Law enforcement conducted a search of **BEAN's** person incident to arrest. **BEAN** was in possession of a silver/grey Samsung flip cellular phone, $398.00, and miscellaneous items. A second cellular phone (Samsung Galaxy S9) was found on the ground beside **BEAN**. A secondary search of **BEAN's** person revealed two plastic baggies of suspected marijuana.

10. Law enforcement returned to the Chevrolet Malibu and secured the vehicle, which had been left running. The vehicle was cleared for other occupants, and the engine was turned off. The strong odor of raw marijuana was detected emitting from inside the vehicle. Law enforcement conducted a probable cause and inventory search of the inside of the vehicle prior to towing. While searching the vehicle, law enforcement located a green pouch on the front passenger seat. Inside the green pouch, law enforcement found $1,458.00 and a plastic baggie containing a powdery substance suspected to be fentanyl. Next to the green pouch, law enforcement located a digital scale and a box of sandwich bags. The lid to the digital scale was on the front passenger floorboard. In the center console, law enforcement located another smaller plastic baggie containing a powdery substance suspected to be fentanyl and a black Verizon flip cellular phone. A white/pink iPhone was located on the driver's seat. Based on training and experience, I know that multiple cellular phones, a digital scale, plastic baggies, and United States currency are indicators of drug trafficking.

11. **BEAN** was transported to MCSO headquarters for an interview. SA Buzzard and I conducted a post-Miranda interview with **BEAN**. In summary, **BEAN** admitted to fleeing from Deputy Thornton in his vehicle. **BEAN** said that another male was inside the vehicle when he drove off and that **BEAN** dropped the male off prior to parking behind the apartments on Riverview Avenue. **BEAN** said that he fled from Deputy Thornton because the other male had a gun and drugs with him inside the vehicle. I advised **BEAN** that investigators surveilled him after he fled and that no other individuals had exited the vehicle. **BEAN** denied involvement with the suspected drugs located inside the vehicle.

12. Following **BEAN**'s arrest, I reviewed recorded phone calls that **BEAN** made while incarcerated at the Montgomery County Jail. During one of the recorded calls, **BEAN** spoke with a female believed to be his wife. During the call, **BEAN** had the female call an unidentified male (hereinafter, "UM"). While speaking to the UM, **BEAN** and the UM used certain terms that I understood, based on my training and experience, to refer to selling drugs and drug quantities. In summary, the UM asked **BEAN** if law enforcement had found anything on him. **BEAN** answered affirmatively and referenced the drugs that law enforcement had found inside the vehicle. Additionally, **BEAN** told the UM that he had lied to investigators and said that he had someone else in the vehicle with him.

13. The suspected drugs recovered from the Chevrolet Malibu and **BEAN**'s person were submitted to the Miami Valley Regional Crime Laboratory for analysis. I received lab results confirming the baggie of suspected fentanyl located inside the green pouch to be valeryl fentanyl (Schedule I) and fentanyl (Schedule II), having a net weight of 16.11 grams. The baggie of suspected fentanyl located inside the center console was confirmed to be valeryl fentanyl (Schedule I) and fentanyl (Schedule II), having a net weight of 0.80 grams. The baggies of marijuana were confirmed to be Marijuana (Schedule I), having a gross weight of 11.53 grams.

14. Based on the facts set forth in the Affidavit, there is probable cause to believe that, on or about December 18, 2018, in the Southern District of Ohio, **BEAN** committed a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), that being possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of a fentanyl analogue.

Further your Affiant sayeth naught.

_____
Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me
this 28th day of February, 2019.

_____
MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE